2007, 5139. And Mr. Tomlinson, we'll be ready when you are. Thank you, sir. Back to subject matter we can see with the naked eye. Sir? Back to subject matter we can see with the naked eye. Something we can all understand, simple construction. May it please the court, my name is David Tomlinson. I represent Phyllis May Corporation. They are a small owned minority contractor and construction contractor in Dallas, Texas. We're here this morning because the Court of Claims, the Court of Federal Claims rendered a summary judgment in favor of the defendant, Navy. The basics for this judgment was race judicata, claim preclusion. In other words, you filed similar claims in two forms. That's what they're saying. They're basically saying we should have tried this large case that we brought to the court at the time we were back at the Armed Services Board of Contract Appeals trying some small accelerated cases. Same basis of operative facts. They're saying they're saying transactional type facts. Are they wrong? They're wrong. It'd be different theories. Absolutely different theory. And they also violated the Contract Disputes Act over and over again, Judge Mueller's decision does. Which provision, excuse me? Sir? I was going to say your theory is that the Contract Disputes Act changes the usual rules of race judicata, at least that's one of your theories. Yes, sir. That is certainly one of them. The Contract Disputes Act allows us to split claims. Yeah, but the problem is that neither you nor the government bothered to look at the legislative history of the Contract Disputes Act. I looked at the history, yes, sir. Legislative history makes pretty clear that they weren't changing the usual claim-splitting rules because they originally had a provision in there that would have done that, and they took it out, and they said we're not changing the usual rules. I mean, it's hard for you to respond to that because neither one of you has really looked at the legislative history. The legislative history, which I quoted in my brief, said that Congress intended for a contractor to be able to take his small claims to the Boards of Contract Appeals and take advantage of this 180-day period to get them resolved quick and inexpensive and so forth, and then he had the option of taking his larger, more complex claims back to the Board if he wanted to or to the Court of Federal That's what the congressional history said. What it also says that this provision allowing splitting of claims was taken out. They say the amendment deleting original Section 10D of S. 3178 is out of concern the section might be interpreted as permitting contractors to split claims arising out of the same set of facts. It is not the intention of the committees to change the present law regarding joint or compulsory counterclaims and definition of separate claims. I don't know how that could be clearer. We're not talking about taking a claim and splitting an individual claim. These are all separate claims. That's a different question, but I read this legislative history as being very clear that Congress is not intending, by the provisions that remain when the statute was enacted, to change the usual rules of res judicata. I mean, you have an argument under the usual rules of res judicata, but this legislative history, which it's startling to me that neither one of them bothered to find it. I'm startled at this because the case law that I've cited in the brief says the same thing. This is much later in time than the Contract Disputes Act was passed. Let me proceed. I'm not doing any good with this. I think the Contract Disputes Act controls this matter. As we all know, it controls all contract dispute resolutions in the federal arena to start with. Here's why this case needs to be— Where does the CDA provide that you can take one case, one set of operative facts, and file some claims in one tribunal and other claims in another tribunal and pursue them both to completion? Because it says that when a contracting officer gives me a decision, I have a choice. You have a choice, A or B. I can go to the board or I can go to the board with individual claims. With an individual claim from an individual contracting officer decision. They're all separate, and that's what we did here. Where does it say you can go to both? You don't go to both. You have a choice. You can go to one or the other. You went to both, and you're complaining— No, no, no, sir. No, sir. My large claim never went to the board. It's not been to the board. The large claim has never been tried anywhere. Yeah, but these were separate claims on the same operative facts. It came out of the same contract, Judge. If you follow this line of reasoning, you can only bring one claim under a contract, and the second claim comes out of the same facts. It's going to be the same parties. It's going to be the same contract, the same project every time. Yeah, but there are two separate questions here. One is whether the Contract Disputes Act changed the general rules of res judicata, and as Judge Lurie points out, the language is at best unclear about that, and to me, the legislative history makes clear that they're not intending to change the rules of res judicata. No, sir. Res judicata— Let me just finish. Yes, I'm sorry. The second question is whether under the usual rules of res judicata, you can bring one claim under a contract in one form and one claim in another form, and sometimes maybe those are separate claims. Our decision in the container case, which the government cites, suggests that the usual rule is that claims under a I think that sometimes—and Placeway says also that sometimes you can have separate claims under the same contract. So if we are applying the general rules of res judicata here, the question is, we have here an attempt to split claims under a single contract between two fora, and the question is, is that permissible? The general rule stated in the container is No. Right? Is that correct? Not in my mind, Judge. No. Why not? Why is that wrong? Each individual claim submitted to the government, it's a contracting officer's decision. It's under the Contract Disputes Act. At the time I receive his decision, if I don't agree with it, I have an option. I have a choice to make. It's the election doctrine. I can—in 90 days, I can take it to the Board of Contract Appeals. If I don't do that, for whatever reason, I can take it to the—I have a year to take it to the court. It's my choice. It's a separate claim because it's a separate contracting officer's decision. A separate docket number will be applied to it. It's going to come out of the same contract, but every contract I've ever worked with has had multiple claims on it. Yeah, but don't you agree that there's some—at least some factual overlap between the claims that you brought before the board and the claims that you brought in the Board of Federal Claims? I think some of the facts may overlap. For example, we have a claim for overzealous inspection for the entire contract in this large claim. In one of the eight claims, there was an element of overzealous inspection for a small part—small part of the contract. And Judge Miller pointed that out. But the board didn't rule on it, whether that matters or not. But that issue was never involved in any of the other seven claims. And this is for the entire contract. That was for a small part. They wouldn't accept the new construction. That was a short delay claim. So overlap, yeah, but it's—they're totally different in that I'm saying that— They're totally different? It's different because I'm saying they overinspected this job for the entire life of the job. We want to be paid for that. The other claim is that they overinspected for part of the job? Well, yeah, exactly. We said the new construction was completed on a certain date. We thought it was completed. And we couldn't work on the second part of this contract until they accepted the new construction. So we said, we're through. It's done. It's ready. Come and look at it and accept it. Well, they didn't do that. They spent 82 days looking at it before they accepted it. The Board of Contract Appeals agreed that they delayed us some. That was only a small element. It was overzealous. Tomlinson, it's always best when you've got a question to stop and listen to the question. CDA says, in lieu of appealing a lieu of— that means rather than doing the other— Yes, sir. In lieu of appealing the decision of the CEO to an agency board, the contractor may be in action directly on the claim in the Court of Federalist Claims. In lieu of means instead of. Now, we have a case, the Bonneville case, Yes, sir. where we wrote, in unmistakable clear language, courts have consistently interpreted the CDA as providing the contractor with an either-or choice of form. I agree. That's my position. Well, you've selected one over the other. Judge, each appeal, each claim is a separate appeal. What if at first the contract, I submit a claim, the contracting officer submits, gives me his decision, I don't like it, I go to the board with it. Then a year later, and we try the case and it's resolved, a year later, this is a two- or three-year contract, I have another claim. I get a contracting officer's decision, I said, well, I didn't like what the board did to me, I'm going to go to court this time. That's exactly what the CDA allows me to do. Well, what you're saying, and I think it's correct, that under subsection D of the CDA, it contemplates that under some circumstances, you will be able to file a claim under the same contract, one claim before the board and one claim before the Court of Federal Claims. That seems to me, that's quite correct. There are some times in which you can have two separate claims under a single contract. But it does not imply, it seems to me, that you can always do that. It does not imply that you can always split claims under a single contract. And it depends, does it not, on the degree of factual overlap between the two claims. No, sir. Each individual claim stands on its own merits. I can take half of them to the board. Even if they substantially overlap? Sure. They're all going to have some overlap. Judges are coming out of the exact same contract. Even if the facts are the same? No, if they're the exact fact. Now, grace you to comment, sir. Let's say that you use facts A, B, and C and go to the board. Okay. And then you decide the board decision was not correct as far as part C is concerned, so I'm going to take C and add D and E to it and go to the court of claims. No, but I can take D and E. But not C. Not if it was actually adjudicated. Not if it's exactly the same or nearly the same factual allegations. If you'll let me explain the claims before the board and then the claim that we took to the court, they're not the same factual allegations. Sure, they all came out of the same contract. But listen, here's what we took to the board. We took... But couldn't the other set have claims been raised in the first suit? No, sir. Absolutely not. The first, the large claim was pending, waiting a contracting officer's decision. We started these small claims earlier and I had already scheduled, started scheduling the trials, the accelerated type trials at the board before we even submitted the large claim. You could have submitted the large claim earlier so they could have been heard together, right? I could have, you say? I'm a one-man operation, your honor. I submitted eight. No, I submitted nine small claims. Assuming that you had sufficient manpower within your firm, you could have submitted them at the same time, right? Yeah, but each one of them gets a contracting officer's decision. So I could have appealed it to the board or I could go to the court. Each one stands on its own two feet. You're into your rebuttal time. If you'd like to save it, we'll give you your full three minutes back. I haven't even started on my, what I'd like to tell you before I sit down. Can I have any more direct time? Well, you've got two minutes and four seconds. You can use it now or use it for rebuttal. Gee, all right. I guess I better save it for rebuttal. I thought I'd be given more opportunity to speak, your honor. Thank you. Ms. Conrad. May it please the court. The Court of Federal Claims properly concluded that Phillips made his complaint before that court Why didn't you do more research into the legislative history of the statute? I admit, your honor, I only skimmed the legislative history and my skimming revealed nothing that it revealed no evidence that it set aside the traditional rules of res judicata. It directly supports you. I mean, you know, why do we have to find it? I apologize for that, your honor. I should have looked into that more thoroughly. It clearly supports you. Yes. We believe that the traditional principles of res judicata are still in place after the passage of the Contract Disputes Act. I'm sorry. On what basis do you base that argument? Well, on... Legislative history? Well, actually, on I was looking at the clear language of the CDA, and the clear language is that you're allowed an either or choice of forum, but it doesn't say you can bring multiple claims from the same facts to different courts. And I think that's what the appellant tried to do here, is to bring multiple causes of action on the same transactional facts to different forums at different times. So you're basing your argument on the statutory language of the CDA? That's correct. In lieu of language? That's correct, your honor. And as I acknowledge, we should have supported that more with the legislative history. Let's suppose that we have a contract to build a building for the Army in Washington, D.C., and the contract also covers building a building in Baltimore. Two separate projects. Do they have to bring claims under the contract with respect to the Baltimore project in the same forums that they bring the Washington project without and they don't have a Richard O'Connor problem? Assuming the facts are different, no. I don't believe they would because that I could see as being two separate projects. The facts would be different. The witnesses would be different. They could bring a claim in the ASVCA and bring a separate claim on the Baltimore project in the Court of Federal Claims. But here you don't have that situation because here you have the same contract now granted in the other one you do too but also substantial amount of overlapping facts. Basically they bring like this omnibus claim to the Court of Federal Claims that includes all the facts that have already been litigated before the ASVCA. It doesn't include all of them. I mean there's significant overlap. It doesn't include all of them. There is some factual difference. There is more extensive facts in the Court of Federal Claims but it includes most of the facts that were before the ASVCA and the other point is under traditional principles of race judicata they could have brought this claim to the Board at the same time they brought those other claims. There was no jurisdictional barrier to the Board hearing this November 7, 2003 claim at the same time that they presented their other nine claims. And then also Phillips May argues in his reply brief that it was denied due process before the Board but I think it misconstrues the history there, the case history because it wasn't that it didn't have the opportunity to litigate or couldn't have fully litigated its claims before the Board but it just chose not to. We respectfully ask the Court to affirm. Thank you. Thank you Ms. Conrad. Tomlinson has some rebuttal time. Well, think about this, Your Honors. When we went to the case to the Board with our small claims, we arranged to have all these small accelerated claims tried in 180 days which the CDA provides and that's what we did. The large claim had not yet been appealed. Judge Miller says we had to try them all at the same time. It hadn't even been appealed. There was no jurisdiction at the Board to hear this case when we tried the small claims. It was judicially impossible for us to have tried it with the small claims. If we had appealed our large claim later on to the Board and it would never have been tried with the small claim because of the size it cannot be tried as an accelerated claim. It would have had been tried. Years later and because of its size it would have taken three or four or five judges to decide it not a single judge that decided all the others. So Judge Miller's whole concept that you had to try them together is wrong. It would never have happened that way at the Board. That, I don't think he understands how the Armed Services Board works or how the CDA works for that matter. Claim preclusion. The law says that you do not apply a claim preclusion to preclude a party who's not had his day in court. Unless you're really certain he's had every opportunity to litigate. We had not appealed our large claim to the Board of Contract Appeals when we were there trying our accelerated claim. We could not have tried that case without being jurisdiction at the Board. It would be legally impossible. And the law says if there's any barrier that prevents you from trying a cause of action at this earlier hearing that has been finished then you can't use claim preclusion to preclude the party from having their day in court. You're talking about due process when you exclude the party from having their day in court and that's what's happening here. My client lost almost a million dollars on a contract that was awarded for a million two because of the Navy. And we're not going to have an opportunity to recover that unless this matter is reversed and remanded. And we managed our case exactly what I believe that the Contract Disputes Act allows us to. There's been no prejudice to the government. The government has not defended these claims. They've not defended maladministration. They've not defended impossibility performance and they've not defended overzealous inspection for the contract. They defended it on one of the eight small claims. There's no prejudice to the government. If we don't get our day in court then who has been prejudiced? And that's Phyllis May corporation. Thank you very much. Thank you Mr. Tomlinson. Case will be taken under advisement. All rise. The Honorable Court is adjourned until tomorrow morning at ten o'clock. I had a